**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, INC., as Subrogee of Wilbanks Securities, Inc., | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. CIV-08-1088-F |
| AXA ADVISORS, L.L.C., | ) | |
| Defendant. | ) | |

**ORDER**

Before the court is Defendant's Motion to Dismiss (doc. no. 17). The motion is fully briefed and ready for determination.

Standard of Review

Defendant moves for dismissal of plaintiff's complaint under Rule 12(b)(6), Fed. R. Civ. P. The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1969, 1974, 167 L.Ed.2d 929 (2007). In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. Ridge at Red Hawk, 493 F.3d at 1177.

Complaint Allegations

Mindful of the standard set forth above, plaintiff alleges the following relevant facts in its complaint. Defendant, a national broker-dealer and investment advisor, employed Marsha Schubert, as a registered representative, from approximately May

1998[1] through April 27, 2004. Ms. Schubert maintained a detached, unregistered, "one-person" office for defendant in Crescent, Oklahoma. Defendant's Office of Supervisory Jurisdiction was located in Oklahoma City, Oklahoma, approximately 40 miles from Ms. Schubert's office.

In April 2004, defendant detected signature irregularities on a form purportedly signed by a customer and submitted by Ms. Schubert requesting the distribution of funds from the customer's account. Defendant subsequently confirmed that this was a forged instrument. On April 20, 2004, defendant conducted a conference call with Ms. Schubert to interview her about the forged signature. During the conference call, Ms. Schubert lied to defendant about the fact that she had previously used the customer distribution form for another distribution request; about the fact that she had used a duplicated customer signature and about the reasons for using white-out to remove the customer's fax header on the distribution request form. Later during the call, Ms. Schubert admitted that she had forged the customer distribution request form, but she explained it had been done at the client's request. Defendant asked Ms. Schubert to "come clean" on all incidents of this sort, at which time Ms. Schubert admitted to having further altered the instant customer distribution form by whiting out the date and dollar amount used previously. When asked if there were any other instances of this sort, Ms. Schubert admitted there might be one other similarly forged document. Thereafter, she admitted that there were several other such forgeries.

Defendant's Branch Compliance Specialist commenced a review of approximately 67 of Ms. Schubert's client's files for other forged distribution request forms. The review was completed on April 21, 2004. Although defendant had a "zero tolerance policy" for forging client signatures and altering documents, whether or not

---

[1] Ms. Schubert had been employed by defendant's predecessor, Equitable Life Insurance Company, since May 1992.

done at the request of a client, defendant did not immediately discharge Ms. Schubert. Instead, defendant permitted Ms. Schubert to remain employed until defendant had "finished" the process of terminating her - all without reporting Ms. Schubert's conduct and behavior to anyone. However, defendant never "finished" the process of terminating her and did not terminate her. On April 27, 2004, defendant permitted Ms. Schubert to resign her position, and rather than disclosing the activities in which defendant knew Ms. Schubert was engaged, reported Ms. Schubert's separation to the Self Regulatory Organization ("SRO") and the public stating that she was "permitted to resign while under internal review for using duplicate copies of an IRA distribution form without obtaining new client signatures." No further information was released by defendant.

In late April to early May 2004, defendant became aware of suspicious activity involving clients of Ms. Schubert sending Fed Fund wires into their client accounts and then immediately withdrawing the funds. This activity raised concerns about "money laundering." Although Ms. Schubert was no longer employed by defendant, her clients still maintained accounts with defendant. Defendant's investigation involved its anti-money laundering and internal audit divisions. They quickly discovered that this activity showed up in at least 27 of Ms. Schubert's client accounts and had been occurring from at least 2001 through early May 2004.

Defendant contacted owners of the accounts exhibiting the suspicious activity but only interviewed the owners of one account. Information obtained from the owners reasonably suggested that Ms. Schubert had most likely been involved in additional violations of company policy, federal and state securities laws, and SRO rules and regulations.

Defendant's investigation continued into June 2004. Rather than interview any of Ms. Schubert's other clients who still had accounts under suspicion at defendant,

defendant interviewed Ms. Schubert. She again lied and attempted to explain away any concerns. She further provided defendant with forms she had executed with clients which exonerated defendant from any liability or wrongdoing. When Ms. Schubert delivered these executed forms to defendant in June 2004, defendant decided it could rely upon the responses to its investigation provided by Ms. Schubert and ceased its investigation without disclosing any information it knew relating to Ms. Schubert and her reasonably suspected violations of securities laws and regulations to Wilbanks Securities, Inc., the NASD, the NYSE, or federal or state securities authorities.

Wilbanks Securities, Inc. ("Wilbanks"), a local broker-dealer, hired Ms. Schubert on May 6, 2004 after making a due diligence investigation of her background and job performance that included seeking information from and being provided with information by defendant. In response to Wilbanks' inquiry about Ms. Schubert, defendant stated to Wilbanks only that "Ms. Schubert has a clean record." Defendant did not disclose the adverse information regarding Ms. Schubert's conduct which it knew at the time and subsequently discovered.

Wilbanks fired Ms. Schubert on October 11, 2004 when Wilbanks discovered Ms. Schubert was engaged in dishonest and fraudulent acts constituting a continuing "Ponzi scheme." Wilbanks reported Ms. Schubert's fraud to the Oklahoma Department of Securities. According to plaintiff, Ms. Schubert, while employed by defendant, had been engaged in stealing approximately 9 million dollars from over 80 customers in the Ponzi scheme. Wilbanks subsequently learned that the scheme had begun in approximately 2001. Ms. Schubert was subsequently criminally charged, convicted and is currently serving a federal prison sentence for her crimes.

Many of the customers of defendant and Wilbanks, as well as third parties, who suffered alleged losses as a direct result of Ms. Schubert's Ponzi scheme filed civil and arbitration claims against defendant and Wilbanks.

On November 1, 2003, plaintiff, a national insurance company, executed a Securities Dealer Fidelity Bond in favor of Wilbanks. Among other things, the fidelity bond insured Wilbanks against loss, within stated limits, resulting from one or more dishonest or fraudulent acts of an employee. The dishonest and fraudulent acts of Ms. Schubert, which were committed during the time she was employed by Wilbanks, occurred within the coverage period for the fidelity bond. In accordance with the terms of the fidelity bond, plaintiff has paid $1,315,641.85 for costs, attorney fees and settlements of the civil and arbitration claims to, or for the benefit of, Wilbanks.

As required by the fidelity bond, Wilbanks assigned to plaintiff an interest, to the extent of the amounts paid by plaintiff under the fidelity bond, in all of its rights, title, and interest and causes of action as it has against defendant.

In the complaint, plaintiff, as Wilbanks' assignee and subrogee, alleges claims of negligence and constructive fraud against defendant. Plaintiff seeks to hold defendant responsible in damages for its failure to disclose the facts and circumstances surrounding Ms. Schubert's resignation from defendant as well as information regarding Ms. Schubert's conduct and activities while employed by defendant. For its damages, plaintiff seeks to recover the amounts it paid under the fidelity bond.

Discussion

Defendant seeks dismissal of plaintiff's complaint on the basis that the claims alleged are disguised contribution claims and are barred under the Oklahoma Uniform Contribution Among Tortfeasors Act ("UCATA"), 12 O.S. § 832. According to defendant, it participated in a multi-party settlement of 43 arbitration cases involving

Ms. Schubert. Defendant represents that it paid in excess of 92 percent of the settlement consideration. Defendant has submitted the settlement agreements and contends that the court may consider the documents in resolving its dismissal motion since the settlements are referred to in the complaint, are central to plaintiff's claims and plaintiff would not dispute their authenticity. Defendant asserts that Wilbanks fully participated in the settlement negotiations, and along with defendant, was released from liability by the claimants. Defendant contends that plaintiff's claims are barred by the UCATA, specifically, § 832(H) which provides:

> H.   When a release, covenant not to sue, or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death:
>
> * * * *
>
> 2.   It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

12 O.S. 2001 § 832(H). Since the claimants in the 43 arbitration cases in which defendant and Wilbanks were involved released defendant, defendant contends that under the plain language of § 832(H), it is discharged from all liability for contribution to Wilbanks. Defendant contends that the court should reject plaintiff's attempt to avoid § 832(H) by styling its claims as claims for negligence and constructive fraud to do an "end-run" around UCATA's bar against contribution. According to defendant, plaintiff seeks the same damages that would be sought in a contribution claim. Defendant, however, argues that plaintiff is not entitled any recovery for contribution because plaintiff did not pay its pro rata share of the settlements. Defendant asserts that § 832(B) provides for the right of contribution only to a tort-feasor who has paid more than its pro rata share in settlement. For this

additional reason, defendant contends that plaintiff cannot state a claim upon which relief may be granted against defendant.

In its dismissal motion, defendant further argues that plaintiff's request for attorney's fees is barred by the "American Rule." Defendant contends that plaintiff has not cited to a particular statute which authorizes the recovery of attorney's fees. In addition, defendant contends that plaintiff has not pled any exceptions to the "American Rule" to recover the attorney's fees it seeks to recover.

Plaintiff, in response, argues that the UCATA does not apply because § 832(G) specifically provides that "[t]his act shall not apply to breaches of trust or of other fiduciary obligation." *See*, 12 O.S. § 832(G). Plaintiff asserts that the primary allegations of wrongdoing asserted by the arbitration claimants were breach of fiduciary duty and fraud. Although the claimants also alleged other claims, plaintiff contends that those claims arose out of a breach of the fiduciary relationship. In addition, plaintiff contends that the UCATA does not apply because the claims against defendant and Wilbanks did not involve the "same injury." Plaintiff contends that the claims alleged against defendant and Wilbanks were for separate acts of breach of fiduciary duty and fraud during the respective periods of time that Ms. Schubert was employed by each of them. According to plaintiff, the releases given to defendant and Wilbanks do not cover the "same injury" and therefore § 832(H) does not discharge defendant from liability to Wilbanks. Finally, plaintiff contends that its complaint is grounded in negligence and constructive fraud rather than in contribution. Plaintiff contends that it seeks to hold defendant responsible in damages for its misleading disclosures to Wilbanks about Ms. Schubert's character and conduct and for failure to disclose Ms. Schubert's dishonesty, deceit, and violations of policy and procedure. In substance, plaintiff asserts that AXA set Ms. Schubert adrift in Wilbanks' harbor like a bomb-ship laden with dynamite. Plaintiff points out that Oklahoma law follows

the rule that a party who has no duty to speak, but makes a disclosure nevertheless, undertakes to speak truthfully and if the party suppresses pertinent facts or states less than the whole truth, that party may be subject to liability to the party who relied upon the statements made. *See*, MSA Tubular Products, Inc. v. First Bank and Trust Co., 869 F.2d 1422, 1424 (10th Cir. 1989); Uptegraft v. Dome Petroleum Corp., 764 P.2d 1350, 1353 (Okla. 1988). Plaintiff argues that because defendant failed to speak the whole truth as to Ms. Schubert, upon inquiry from Wilbanks, it is subject to liability under Oklahoma law for negligence and constructive fraud.

In regard to its request for attorney's fees, plaintiff contends that the attorney's fees paid in connection with defending the arbitration claims are recoverable as an item of damages for plaintiff's claims. In support of its position, plaintiff relies upon 23 O.S. § 61, which provides:

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.

23 O.S. 2001 § 61. Plaintiff contends that it is entitled to recover for all detriment proximately caused by defendant's negligence and constructive fraud and that this includes attorney's fees paid to defend the arbitration claims. Further, plaintiff contends that whether it is entitled to recover attorney's fees for prosecution of this lawsuit based upon the bad faith exception to the "American Rule" or any other exception to this lawsuit involves a question of fact which cannot be presently determined.

In reply, defendant argues that § 832(G) does not apply because the arbitration claimants did not solely raise claims of breach of fiduciary duty. However, even if the claims were based solely upon breach of fiduciary duty, defendant contends that § 832(G) would also bar plaintiff's disguised claims for contribution. In addition,


countering plaintiff's "same injury" argument, defendant contends that the settlement negotiations between the parties and the settlement payments to the claimants reflected a global, single-injury approach to resolving the arbitrations. Moreover, defendant argues that because it paid more than its fair share of the settlements, it paid for a large part of the "same injury" incurred by Wilbanks. Defendant also contends that plaintiff has benefitted immensely from the settlements and that to allow plaintiff to proceed with its claims would undermine the purpose of the UCATA to foster settlements that resolve litigation. Furthermore, defendant contends that plaintiff now seeks to rely upon exceptions to the American Rule to recover its attorney's fees for this action without having pled facts supporting the application of an exception to the American Rule. Accordingly, defendant contends that plaintiff's complaint fails to state a claim upon which relief may be granted.

Upon review, the court concludes that dismissal of plaintiff's claims is not warranted. Plaintiff has sued defendant based upon theories that defendant breached a *duty to Wilbanks* by making misleading disclosures to Wilbanks about Ms. Schubert's character and conduct and by failing to disclose Ms. Schubert's dishonesty, deceit, and violations of policy and procedure. As a result of this breach, Wilbanks suffered loss and plaintiff was accordingly required to pay out under the fidelity bond. Defendant has not challenged plaintiff's claims except on the ground that they are contribution claims in disguise. The court, however, does not agree with defendant that the claims are contribution claims in disguise. The court finds defendant's authority, Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 858 P.2d 1054 (Wash. 1993); U.S. v. Pretty Products, Inc., 780 F. Supp. 1488 (S.D. Ohio 1991), to be distinguishable. Plaintiff is bringing independent claims for breach of a duty owed to Wilbanks, which resulted in damages, for which plaintiff, as Wilbanks' subrogee and assignee, seeks to recover. Plaintiff's claims are not bottomed on the UCATA,

nor does plaintiff seek to recover an amount paid in excess of its pro rata share of liability. Although plaintiff seeks to recover the amount paid to defend and to settle the arbitration cases, plaintiff alleges that that amount was the damage suffered as a result of the breach of duty by defendant which was owed to Wilbanks. The court concludes that plaintiff asserts in this action a claim for breach of duty by defendant, not a claim for contribution from defendant. Therefore, the court rejects defendant's argument that plaintiff's action is one for contribution which is barred by the UCATA.

As to defendant's motion attacking plaintiff's request for attorney's fees, the court also declines to grant the motion. Plaintiff is seeking to recover the attorney's fees expended in defending the arbitration cases as an element of damages recoverable under 23 O.S. 2001 § 61. Defendant has not addressed plaintiff's argument that such attorney's fees would be recoverable as an element of damages under § 61. As defendant has not addressed this issue, the court declines to dismiss the request for those attorney's fees. As to plaintiff's request "for a reasonable attorney fee" for prosecuting this action, the court declines to dismiss that request. At this point, plaintiff is not a prevailing party in this action. If and when it is determined that plaintiff is a prevailing party, the court can address, if properly raised, the issue of whether plaintiff is entitled to recover its attorney's fees incurred for prosecuting this action.

Accordingly, Defendant's Motion to Dismiss, filed December 5, 2008 (doc. no. 17), is **DENIED**.

DATED this 27th day of February, 2009.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

08-1088p008(pub).wpd